```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Angela Young,                     :

      Plaintiff,              :

  v.                              :     Case No. 2:10-cv-960

Commissioner of Social Security,        JUDGE GREGORY L. FROST
                                               Magistrate Judge Kemp
      Defendant.              :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Angela Young, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for a period of disability and social security disability benefits and for supplemental security income. Those applications (her second set of applications) were filed on July 25, 2007, and alleged that plaintiff became disabled on January 1, 2000. That onset date was later amended to July 25, 2007, which is after plaintiff's last insured date for disability purposes, meaning that only the SSI claim remained for adjudication.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on January 26, 2010. In a decision dated May 13, 2010, the ALJ denied benefits. That became the Commissioner's final decision on August 26, 2010, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on December 27, 2010. Plaintiff filed her statement of specific errors on February 9, 2011. The Commissioner filed a response on March 11, 2011. No reply brief has been filed, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found

at pages 37 through 63 of the record.  The following is a summary of the facts to which plaintiff (who was 32 years old at the time of the hearing and has a tenth grade education) testified.

Plaintiff had used drugs at one time in her life.  She was convicted of a theft offense in 1997 subsequently sent to jail for violating her probation.  At the time of the hearing, she was no longer using drugs and did not drink alcohol.  Since the date she filed her applications for benefits, she had not traveled outside the Columbus area.  She received financial support from her grandfather and also got food stamps.  She had worked previously as a bakery clerk, deli clerk, and fast food worker, all light, unskilled jobs.

Plaintiff testified that anger was her most serious impairment.  She yells and curses on a daily basis, and did so at her last job.  There is nothing in particular which triggers these outbursts.  She also is unable to concentrate and does not pay attention at work.  Additionally, she had some kind of tremor which causes her to drop objects.

Physically, plaintiff had pain in her shoulder for about fifteen years.  She also had back pain since 2002, starting in the mid-back and radiating upward.  That pain is aggravated by bad weather.  She was taking a number of medications and used three inhalers on a daily basis.  She could sit for half an hour, stand for twenty minutes, and walk for twenty minutes to half an hour.  She could lift up to ten pounds.

On a daily basis, plaintiff testified that she might or might not dress and bathe, and might or might not make her bed or prepare meals.  She washed dishes but did not do laundry.  However, she did dust, sweep, vacuum, and take out the trash.  She could do her own grocery shopping.  She watched television but did very little reading.  She also provided care for her grandfather when he was not well.

III.  The Medical Records

The medical records in this case are found beginning on page 244 of the administrative record.  They can be summarized as follows.  Because the issues in this case revolve around plaintiff's mental impairments, the Court will focus its summary on records relating to those conditions.

Plaintiff was seen at Netcare, Inc., on February 22, 2005. At that time, she reported anger arising from her belief that her daughter had been sexually abused.  She said she had experienced symptoms of depression and anxiety for more than five years and also suffered from impulsivity.  She related a history of daily use of cocaine and marijuana from 1992 to 2000.  She had been fired from several jobs because she did not like being told what to do.  She was diagnosed with a major depressive disorder, an anxiety disorder, and post traumatic stress disorder, and her GAF was rated at 48.  (Tr. 246-49).  At that time, it appeared that the only doctor treating her for these problems was Dr. Kistler, her family doctor.  He expressed the opinion on September 10, 2007, that plaintiff was disabled from a combination of bipolar disorder, degenerative joint disease of the lumbar spine, chronic obstructive pulmonary disease, acromioclavicular joint disease in her shoulders, and dysfunctional uterine bleeding.  (Tr. 306).  A counselor from North Community Counseling expressed a similar opinion on the same date.  (Tr. 307-08).

The record contains multiple treatment notes from Dr. Farooqui, plaintiff's treating psychiatrist.  The first of those appears to be dated in June of 2006.  At that time, plaintiff reported difficulty sleeping as well as irritability.  By October of that year, she agreed to try lithium to control some of her symptoms, although at that time she denied any hallucinations or paranoia and her thought process was coherent.  The following month she reported some relief from her symptoms.  She missed a

number of appointments with Dr. Farooqui in 2006 and 2007.

In June, 2007, Dr. Farooqui saw plaintiff again and restarted her on lithium. He also started her on Risperdal and Trazadone. At that time, she reported feeling that someone was following her. Her counselor's notes from earlier in 2007 showed that she was preoccupied with child custody issues, and also seemed unwilling to help herself overcome depression. At an appointment on August 31, 2007, plaintiff reported hearing her name called, and Dr. Farooqui started her on Thorazine. In November, 2007, plaintiff told Dr. Farooqui that she was upset by not getting to see her younger daughter and that her anxiety had increased. He discontinued her prescription for Inderal because she reported that it was not helping her.

On October 31, 2007, Dr. Donaldson saw plaintiff for purposes of a psychological evaluation. He noted that she seemed agitated and withdrawn and appeared to be intimidated by the process. She denied any previous addiction to illicit substances. Dr. Donaldson described plaintiff's hygiene and grooming as "inadequate." Her affect was flat and her mood was depressed with agitated features. She reported daily anxiety and depression. Dr. Donaldson stated that plaintiff's intelligence was in the borderline range and she had limited insight and judgment. He diagnosed a bipolar disorder and a generalized anxiety disorder and rated her GAF at 50-60. Her ability to carry out simple job instructions was "weak, but not impaired." She had mild limitations on her ability to perform repetitive tasks and was moderately impaired in her ability to interact with others and her ability to withstand ordinary work stress. (Tr. 380-83).

Dr. Chambly, a psychologist, reviewed plaintiff's records and essentially reached the same conclusion as Dr. Donaldson, noting that plaintiff could "understand, remember and carry out

instructions.  She can perform simple, routine tasks.  She is not well-suited for working closely with others but could interact on a superficial basis." (Tr. 387).

Plaintiff saw Dr. Farooqui again on February 8, 2008.  At that time, she reported hearing her name called out and stated that Thorazine was not helping.  She was also depressed and still had trouble sleeping.  Dr. Farooqui prescribed Cymbalta and increased her prescription for Trazadone.  On the same date, he completed a form indicating that plaintiff had either poor or no ability to perform fifteen different work-related activities, and only a fair ability to perform others.  He did not provide any specific support for his findings.  (Tr. 456-57).

Dr. Demuth also reviewed the records concerning psychological disability and, on May 9, 2008, expressed the view that plaintiff suffered from depression [bipolar], borderline intellectual functioning, and anxiety.  He rated the severity of plaintiff's work-related impairments as moderate and adopted the mental residual functional capacity finding made by the ALJ who adjudicated plaintiff's prior application for benefits, noting that there were not any significant changes in function or diagnosis since that date.  He also expressed some doubts about plaintiff's credibility.  (Tr. 487-505).

More treatment notes from Dr. Farooqui are found at pages 535-563 of the record.  In March, 2008, plaintiff reported that the Cymbalta had made her more anxious.  Her mood, however, was described as euthymic and reactive and she denied any hallucinations.  In May, 2008 she was somewhat more symptomatic.  The following month, her hygiene had deteriorated and she was seeing some visions at night.  In September, she reported that her medications were of little help and she was continuing to feel paranoid and was sleeping only sporadically.  The following month, however, she was improved.  By December, she was reporting

increased irritability and stress over child custody matters. By January, 2009, she was calmer and in February, her mood was better. By March, although she was still having mood swings, they were not as pronounced, and she was sleeping better. Additional treatment notes from 2009 are found later in the record and do not show any significant changes except that an additional medication had helped her calm down a lot.

## IV. The Vocational Expert's Testimony

A vocational expert, Dr. Walsh, also provided testimony during the administrative proceedings (Tr. 63-67). The parties agreed that plaintiff's past work was all light and unskilled. If she had those physical limitations described by Dr. Cho, and, in addition, could not engage in repetitive movements with her left shoulder, could do only simple tasks, and could have only superficial or minimal contact with others, she could not do any of her past work. If, in addition to those limitations, she also could not reach overhead with her left arm more than occasionally, she could still do a fair number of light and sedentary jobs, such as cleaner, sorter or packer. However, if she was as limited as Dr. Farooqui stated, or if she were as limited as she testified, she could not work. That would be true even if her testimony about physical limitations were not taken into account.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 8 through 26 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act up to March 31, 2001. The ALJ next found that plaintiff had not engaged in substantial gainful activity from her earlier alleged onset forward, and not since her amended onset date of January

25, 2007.

As far as her impairments are concerned, the ALJ found that plaintiff had severe impairments including shoulder impingement, chronic obstructive pulmonary disease/asthma, a history of uterine fibroids, pelvic pain due to ovarian cysts and torsion, fatigue due to anemia cause by abnormal uterine bleeding, affective and anxiety disorders, borderline intellectual functioning, and a history of substance abuse in reported remission. She also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

As far as plaintiff's limitations were concerned, the ALJ found that plaintiff had the residual functional capacity to perform a full range of light work except that she could only occasionally reach overhead with her left arm, needed to avoid repetitive movement of her left shoulder, and could do only low stress work in a nonpublic environment with minimal superficial contact with others. With these limitations, although plaintiff could not do her past relevant work, she could do those jobs which Dr. Walsh identified. The ALJ further found that they existed in substantial numbers in the regional economy. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises three errors. She contends: (1) that the ALJ did not give appropriate consideration to the opinion of her treating psychiatrist; (2) that the ALJ should have had the complete medical record reviewed by a medical expert or called a medical expert to testify at the hearing; and (3) that the record filed with Court is incomplete and, as a result, plaintiff has been unable to address all of the evidence considered by the ALJ. The Court reviews the

administrative decision under this legal standard:

<div style="padding-left: 2em;">

<u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

</div>

Plaintiff's first assignment of error deals with the ALJ's decision to discount the opinion of Dr. Farooqui to the effect that plaintiff is totally disabled from psychological symptoms. The applicable regulation (20 C.F.R. §404.1527(d)) and the case law make clear that, although a treating source's opinion need not necessarily be given controlling weight, when it is not accepted, an ALJ must both cite to acceptable reasons for

-8-

rejecting or discounting the opinion, and state clearly and adequately why that was done. See Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004); see also Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007). If there is no countervailing evidence and no basis for disregarding the treating source's opinion, however, the ALJ is required to accept it. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).

Here, the ALJ did not give Dr. Farooqui's opinion "any great weight" for several reasons. First, she noted that he had seen plaintiff only a handful of times before reaching his conclusions, and those conclusions were inconsistent with the ones reached by the state agency reviewing psychologists. Second, it appeared that he relied heavily on plaintiff's own self-report of psychological symptoms. (Tr. 20). Later in the administrative decision, the ALJ found plaintiff not to be fully credible, and plaintiff does not challenge this finding in her statement of errors. Specifically, the ALJ noted that plaintiff's work history, her non-compliance with treatment, her failure to keep appointments, and her tendency to exaggerate called into doubt the severity of her symptoms. These are validly articulated reasons for giving Dr. Farooqui's opinion less than controlling weight.

Because the ALJ found the state agency reviewers more credible that Dr. Farooqui, it is also important to review her analysis of those opinions when determining if an adequate basis exists for discounting his opinion. In that regard, the ALJ noted that plaintiff performed various adaptive activities on a daily basis, such as cleaning, shopping, cooking, taking public transportation, paying bills, and maintaining a residence. The ALJ found, as the state agency reviewers concluded, that any limitations in these areas were no more than moderate. (Tr. 13-14). She also found, based on plaintiff's testimony and the

opinions of those reviewers, that any difficulty in social functioning could be accommodated by limiting plaintiff to no more than superficial contact with others.  Finally, she found that the record lacked evidence that plaintiff was easily distracted or had to be redirected, and she could do a variety of mental activities such as answer questions appropriately, remember things, and take her medications.  Again, this indicated no more than moderate inability to work with the required degree of concentration, persistence and pace.  All of these findings are supported by citations to evidence in the record, and they are all inconsistent with Dr. Farooqui's opinion that plaintiff has little or no ability to do any of the things necessary to hold a job.

    Plaintiff argues that psychiatrists must accept a patient's subjective description of symptoms because that forms the primary basis for treatment, and that is true.  Certainly, a treating mental health provider's opinion may not be disregarded or discounted on that basis alone.  However, where, as here, the plaintiff is found to be less than credible, an ALJ may reasonably conclude that self-reported symptoms are not as reliable as they might be if no credibility issues existed.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Stevenson v. Astrue, 2010 WL 3034018 (M.D. Tenn. August 3, 2010).  Plaintiff also contends that no evidence after October, 2007 contradicted Dr. Farooqui's opinion, but, as the above discussion of the ALJ's decision reveals, that is simply not so.  The ALJ relied on, among other things, Dr. Demuth's assessment from 2008 and plaintiff's testimony of her activities.  Overall, therefore, the record contains enough credible evidence to support the ALJ's rejection of Dr. Farooqui's opinion as controlling on the issue of disability.

    Plaintiff's second claimed error relates to the ALJ's

failure to call a medical expert to testify or to have such an expert review the entire record, including Dr. Farooqui's reports after 2007 and the combination of plaintiff's physical and psychological impairments.  The short answer to this argument is that it was within the ALJ's discretion, on this record, to call or not to call a medical expert, and the Court cannot reverse an ALJ's reasonable exercise of that discretion.

The Court addressed the legal standard applicable to this issue in Smith v. Comm'r of Social Security, 2010 WL 6303884, *6 (S.D. Ohio Nov. 24, 2010), adopted 2011 WL 1125031 (S.D. Ohio March 24, 2011), noting that:

> As the court observed in Griffin v. Astrue, 2009 WL 633043 *10 (S.D. Ohio March 6, 2009), "[t]he primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases."  Whether to call such an expert to testify is generally left to the discretion of the ALJ, see id., quoting Haywood v. Sullivan, 888 F.2d 1463, 1467-68 (5th Cir. 1989), and the Court may overturn the exercise of that discretion only if it appears that the use of a medical consultant was necessary—rather than simply helpful—in order to allow the ALJ to make a proper decision. See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir. 1986), quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977).

There is no showing in this case that the use of a medical consultant was necessary.  Dr. Farooqui's reports from 2008 and 2009 are not significantly different from those of 2006 and 2007, which were reviewed by the state agency reviewers.  In fact, if anything, they show that plaintiff's condition improved over time with different medications and changes in her family situation.  There was no need for the ALJ to have a medical expert consider these additional records.  Further, the ALJ did take both psychological and physical limitations into account in developing

-11-

the plaintiff's residual functional capacity, and plaintiff does not explain, in her statement of errors, how a medical expert might have added information to that analysis.  The vocational expert was clearly asked to take both physical and psychological limitations into account in his testimony, and plaintiff does not suggest that either of these types of limitations was inadequately described except for her argument that Dr. Farooqui's opinion about the extent of her psychological impairment should have been fully credited by the ALJ.  For these reasons, the Court finds no merit in this second argument.

Plaintiff's third and final argument is that the record before the Court is inadequate because, in her opinion, the ALJ referred to some IQ testing done in connection with the prior denial of benefits, but that testing is not in the current administrative record.  This argument merits little discussion. As the Commissioner's memorandum points out, the only relevance of that testing would be in relationship to whether plaintiff's limitations coincided with those set forth in section 12.05(C) of the Listing of Impairments, which deals with mental retardation.  Although there are no IQ scores in the present record (and if plaintiff thought she met this section of the Listing, she may well have had the burden of submitting evidence as to each of its requirements), there is also no evidence suggesting she could meet other aspects of the Listing.  None of the various treating, examining or reviewing mental health professionals suggested she suffered from mental retardation, variously stating that her cognitive functioning was normal or that she may have borderline intelligence, and there is no evidence of any deficits in adaptive functioning manifesting themselves prior to age 22, which is one of the requirement of this particular section.  See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).  Under these circumstances, if there was any

error in not including the prior IQ test scores in the record, that error had no effect on the Court's ability to review the ALJ's decision on the issue concerning section 12.05(C) and would therefore be harmless.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Clerk be directed to enter judgment in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge